UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


ALONZO MOORE,

                    Petitioner,

v.                                    Case No. 3:07-cv-117-J-34MCR

SECRETARY OF THE FLORIDA
DEPARTMENT OF CORRECTIONS,[1]
et al.,

                    Respondents.
_____

**ORDER**[2]

**I. Status**

Petitioner Alonzo Moore, who is proceeding <u>pro se</u> and <u>in forma pauperis</u>, initiated this action by filing a Petition for Writ of Habeas Corpus (Petition) (Doc. #1) under to 28 U.S.C. § 2254 on February 5, 2007, pursuant to the mailbox rule.  Petitioner challenges a 1997 state court (Duval County, Florida) judgment of conviction for armed burglary of an occupied structure with a dangerous weapon and concealed identity and four counts of armed robbery with a weapon and concealed identity on the following

_____

    [1] The Secretary of the Florida Department of Corrections is the proper Respondent having custody of Petitioner.

    [2] This is a "written opinion" under § 205(a)(5) of the E-Government Act and therefore is available electronically.  However, it has been entered only to decide the matters addressed herein and is not intended for official publication or to serve as precedent.

seventeen grounds: (1) ineffective assistance of counsel for failing to obtain an expert on drug addiction; (2) ineffective assistance of counsel for failing to file an adequate motion to suppress Petitioner's confession; (3) ineffective assistance of counsel for allowing Petitioner to testify at the trial without an expert witness to corroborate his testimony as to his drug-induced mental state; (4) ineffective assistance of counsel for failing to properly develop a defense of voluntary intoxication; (5) ineffective assistance of counsel for failing to call Joyce Wright, as a corroborating defense witness; (6) ineffective assistance of trial counsel based on the cumulative effect of the errors alleged in grounds one through five; (7) the four convictions and sentences for armed robbery with a weapon and with concealed identity are illegal because the State did not establish the essential elements of the offenses by prima facie evidence; (8) the conviction and sentence for armed burglary of an occupied structure with a dangerous weapon and concealed identity are illegal because the State did not establish the essential elements of the offense by prima facie evidence; (9) the state trial court erred in sentencing Petitioner because the instant offenses occurred more than five years after his release on parole for a prior offense; (10) ineffective assistance of counsel for failing to investigate and argue the validity of the prior convictions used to qualify him for sentencing as a prison releasee reoffender (PRR), violent career

criminal (VCC), and habitual violent felony offender (HVFO); (11) the armed robbery convictions are illegal because the State failed to prove he possessed a deadly weapon; (12) ineffective assistance of counsel for failing "to assure" that Petitioner's trial was open to the public; (13) ineffective assistance of counsel for failing to object to the court's not administering the oath to the prospective jurors; (14) Petitioner was in handcuffs and shackles in front of the jury during the entire trial, thus resulting in fundamental constitutional error; (15) the state court erred in sentencing Petitioner as a PRR, VCC, and HVFO because the instant offenses occurred more than five years after Petitioner's release on parole for a prior offense; (16) the state court erred in sentencing Petitioner as a PRR with respect to burglary with a dangerous weapon because Florida Statutes section 775.082(8) (1997) violates Article II, Section 3 of the Florida Constitution; and (17) the verdict rendered in state court for burglary with a dangerous weapon must be reduced to the lesser offense of burglary since the jury found the Petitioner used a weapon, but not a deadly weapon, in committing the four robberies.

Respondents have submitted a memorandum in opposition to the Petition. See Respondents' Answer to Petition for Writ of Habeas Corpus (Response) (Doc. #15).[3] On May 9, 2007, the Court entered an Order to Show Cause and Notice to Petitioner (Doc. #8),

_____

[3] The Court will refer to Respondents' exhibits as "Resp. Ex."

3

admonishing Petitioner regarding his obligations and giving Petitioner a time frame in which to submit a reply. Petitioner submitted a brief in reply on January 7, 2008. <u>See</u> Petitioner's Reply to Respondents' Answer to Petition for Writ of Habeas Corpus (Reply) (Doc. #20). This case is ripe for review.

## II. Procedural History

On November 26, 1997, Petitioner was charged in Duval County, Florida, with armed burglary and four counts of armed robbery. Resp. Ex. A, Amended Information. Before trial, the State filed notices of its intent to treat Petitioner as a PRR, HVFO, and VCC for purposes of sentencing. Resp. Ex. B. After jury selection, <u>see</u> Resp. Ex. G, Petitioner proceeded to a jury trial on December 2, 1997, <u>see</u> Resp. Ex. H, Transcript of the Jury Trial Proceedings (Tr.). At the conclusion of the trial, a jury found Petitioner guilty of armed burglary of an occupied structure with a dangerous weapon and concealed identity (count one) and armed robbery with a weapon and concealed identity (counts two, three, four and five). Resp. Exs. I, Verdicts; M, Judgment. Petitioner, through counsel, filed a motion for new trial, <u>see</u> Resp. Ex. J at 87-88, and after lengthy arguments by both parties, <u>see</u> Resp. Ex. K, Transcript of the Sentencing Proceedings (Sentencing Tr.) at 196-237, the trial court denied the motion in a written order, <u>see</u> Resp. Ex. J at 133-37.

The sentencing proceedings were held on December 15, 16 and 17, 1997. See Sentencing Tr. During the sentencing, the State admitted prior judgments and sentences of Petitioner into evidence for purposes of PRR, HVFO, and VCC sentencing. See Resp. Ex. L. On December 17, 1997, Petitioner was sentenced as follows: as a PRR, to a term of life imprisonment for armed burglary (count one); as a VCC, to concurrent terms of life imprisonment for armed robbery (counts two and three); as a HVFO, to concurrent terms of life imprisonment for armed robbery (counts four and five) with fifteen (15) year minimum mandatory terms of imprisonment. Resp. Ex. M.

On appeal, Petitioner, through counsel, filed an Initial Brief, raising the following claims: (1) the trial court erred in sentencing Petitioner as a PRR, VCC, and HVFO because the instant offenses occurred more than five years after Petitioner's release on parole for a prior offense; (2) the trial court erred in sentencing Petitioner as a PRR with respect to burglary with a dangerous weapon because Florida Statutes section 775.082(8) (1997) violates Article II, section 3 of the Florida Constitution; and (3) the verdict for burglary with a dangerous weapon must be reduced to the lesser offense of burglary since the jury found Petitioner used a weapon, but not a deadly weapon, in committing the four robberies. Resp. Ex. O. The State filed an Answer Brief, see

Resp. Ex. P, and on April 16, 1999, the appellate court affirmed Petitioner's convictions and sentences per curiam, stating:

> This cause is before us on appeal from Appellant's convictions and sentences for burglary and four counts of robbery. Finding no reversible error, we affirm. As we did in Woods v. State, 98-1955, ___ So.2d ___, 1999 WL 162971 (Fla. 1st DCA March 26, 1999), we certify the following question:
>
> DOES THE PRISON RELEASEE REOFFENDER PUNISHMENT ACT, CODIFIED AS SECTION 775.082(8), FLORIDA STATUTES (1997), VIOLATE THE SEPARATION OF POWERS CLAUSE OF THE FLORIDA CONSTITUTION?

Moore v. State, 729 So.2d 541 (Fla. 1st DCA 1999); Resp. Ex. Q. The mandate was issued on May 4, 1999. Resp. Ex. Q.

Petitioner, through counsel, filed a Notice to Invoke Discretionary Jurisdiction, see Resp. Ex. R, and the parties filed briefs on the merits, see Resp. Exs. S; T. The Supreme Court of Florida, on June 22, 2000, rendered a per curiam majority opinion, stating:

> We have for review the decision in Moore v. State, 729 So.2d 541 (Fla. 1st DCA 1999), in which the district court, as it did in Woods v. State, 740 So.2d 20 (Fla. 1st DCA 1999), certified the following question:
>
> DOES THE PRISON RELEASEE REOFFENDER PUNISHMENT ACT, CODIFIED AS SECTION 775.082(8), FLORIDA STATUTES (1997), VIOLATE THE SEPARATION OF POWERS CLAUSE OF THE FLORIDA CONSTITUTION?
>
> We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.

> We recently approved the First District's opinion in <u>Woods</u>, holding that the Prisoner Releasee Reoffender Act, as properly interpreted by the First District, does not violate separation of powers. <u>See</u> <u>State v. Cotton</u>, Nos. SC94996 & SC95281, 769 So.2d 345, 2000 WL 766521 (Fla. June 15, 2000). Accordingly, for the reasons expressed in <u>Cotton</u>, we answer the certified question in the negative and approve the First District's decision in this case.

<u>Moore v. State</u>, 761 So.2d 321, 321-22 (Fla. 2000); Resp. Ex. U.

On or about November 28, 2000, Petitioner filed a <u>pro</u> <u>se</u> motion for post conviction relief and thereafter supplemented the motion with additional claims (Rule 3.850 motion), ultimately raising a total of sixteen claims. Resp. Ex. V. Following a May 27, 2004 evidentiary hearing on grounds one, two, five and thirteen, <u>see</u> Resp. Ex. W at 209-57, Transcript of the Evidentiary Hearing (EH Tr.),[4] the trial court denied the Rule 3.850 motion on May 25, 2005, <u>id</u>. at 174-88. Petitioner appealed the denial, <u>see</u> Resp. Ex. X, and the parties filed briefs, <u>see</u> Resp. Exs. Y; Z. On June 30, 2006, the appellate court affirmed the denial <u>per</u> <u>curiam</u>, <u>see</u> <u>Moore v. State</u>, 935 So.2d 4 (Fla. 1st DCA 2006); Resp. Ex. AA, and the mandate issued on August 18, 2006, <u>see</u> Resp. Ex. AA.

---

[4] In citing to the transcript of the evidentiary hearing, this Court will refer to the page number in the upper right-hand corner of the page.

### III. One-Year Limitations Period

The Petition is timely filed within the one-year period of limitations.  <u>See</u> 28 U.S.C. § 2244(d); Response at 5.

### IV. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Id</u>. The pertinent facts of this case are fully developed in the record before the Court.  Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), <u>cert</u>. <u>denied</u>, 541 U.S. 1034 (2004), an evidentiary hearing will not be conducted.

### V.  Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (AEDPA), the review "is 'greatly circumscribed and highly deferential to the state courts.' <u>Crawford v. Head</u>, 311 F.3d 1288, 1295 (11th Cir. 2002)." <u>Stewart v. Sec'y, Dep't of Corr.</u>, 476 F.3d 1193, 1208 (11th Cir. 2007).

[Section] 2254(d) allows federal habeas relief
for a claim adjudicated on the merits in state
court only if the state court adjudication[5]
resulted in a decision that was: "(1) . . .
contrary to, or involved an unreasonable[6]
application of, clearly established Federal
law, as determined by the Supreme Court of the
United States; or (2) . . . based on an
unreasonable determination of the facts in
light of the evidence presented in the State
court proceeding." 28 U.S.C. § 2254(d);
Marquard, 429 F.3d at 1303. The phrase
"clearly established Federal law," as used in
§ 2254(d)(1), encompasses only the holdings,
as opposed to the dicta, of the United States
Supreme Court as of the time of the relevant
state court decision. See Carey v. Musladin,
549 U.S. —, 127 S.Ct. 649, 653, 166 L.Ed.2d
482 (2006) (citing Williams v. Taylor, 529
U.S. 362, 412, 120 S.Ct. 1495, 1523, 146
L.Ed.2d 389 (2000)); Osborne v. Terry, 466
F.3d 1298, 1305 (11th Cir. 2006).

Id. at 1208-09.

"AEDPA also requires federal habeas courts to presume the

correctness of state courts' factual findings unless applicants

rebut this presumption with 'clear and convincing evidence.' §

2254(e)(1)." Schriro, 550 U.S. at 473-74. "This presumption of

---

[5] For a state court's resolution of a claim to be an
adjudication on the merits, so that the state court's determination
will be entitled to deference for purposes of federal habeas corpus
review under AEDPA, all that is required is a rejection of the
claim on the merits, not an opinion that explains the state court's
rationale for such a ruling. Wright v. Sec'y for the Dep't of
Corr., 278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S.
906 (2003).

[6] "The question under AEDPA is not whether a federal court
believes the state court's determination was incorrect but whether
that determination was unreasonable - a substantially higher
threshold." Schriro, 550 U.S. at 473 (citing Williams v. Taylor,
529 U.S. 362, 410 (2000)).

9

correctness applies equally to factual determinations made by state trial and appellate courts." <u>Bui v. Haley</u>, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing <u>Sumner v. Mata</u>, 449 U.S. 539, 547 (1981)).

## VI. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citations omitted). The Eleventh Circuit has captured the essence of an ineffectiveness claim:

> <u>Strickland v. Washington</u> instructs us that the benchmark for judging a claim of ineffective assistance of counsel is whether counsel's performance "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). In order to prevail on an ineffective-assistance-of-counsel claim, a petitioner must establish two things. First, he must prove that counsel's performance was deficient. "Second, the [petitioner] must show that the deficient performance prejudiced the defense." <u>Id</u>. at 687, 104 S.Ct. at 2064.[7] We echo the caution sounded by the Court in <u>Strickland</u>:

---

[7] "Establishing these two elements is not easy: 'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.'" <u>Van Poyck v. Fla. Dep't of Corr.</u>, 290 F.3d 1318, 1322 (11th Cir. 2002) (per curiam) (citations and footnote omitted), <u>cert</u>. <u>denied</u>, 537 U.S. 812 (2002), 537 U.S. 1105 (2003).

"Representation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another." Id. at 693, 104 S.Ct. at 2067. We also note the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other. Indeed, we previously have concluded that because both parts of the test must be satisfied to show a Sixth Amendment violation, a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa. See Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000).

In order to prove the deficient performance prong of the Strickland test, the petitioner must show that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. Strickland, 466 U.S. at 688, 104 S.Ct. at 2065. "Judicial scrutiny of counsel's performance must be highly deferential" and there is a "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." Id. at 689, 104 S.Ct. at 2065. Indeed, as we have said, "[t]he test for ineffectiveness is not whether counsel could have done more; perfection is not required. Nor is the test whether the best criminal defense attorneys might have done more. Instead, the test is . . . whether what [counsel] did was within the wide range of reasonable professional assistance." Waters, 46 F.3d at 1518 (quotation marks and citation omitted). In order to establish that counsel's conduct was unreasonable, therefore, the petitioner must prove "that no competent counsel would have taken the action that his counsel did take." Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc). Restated, "[t]he test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense

counsel acted at trial." <u>Waters</u>, 46 F.3d at 1512 (quotation marks and citation omitted).

Another important facet of most ineffective-assistance-of-counsel claims is trial strategy. We have long held that the fact that a particular defense was unsuccessful does not prove ineffective assistance of counsel. <u>See</u> <u>Chandler</u>, 218 F.3d at 1314. Moreover, "counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken might be considered sound trial strategy." <u>Id</u>. (quotation marks and citation omitted).

<u>Ward v. Hall</u>, 592 F.3d 1144, 1163-64 (11th Cir. 2010).

A state court's adjudication of an ineffectiveness claim is accorded great deference.

The question "is not whether a federal court believes the state court's determination" under the <u>Strickland</u> standard "was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Schriro</u>, <u>supra</u>, at 473, 127 S.Ct. 1933. And, because the <u>Strickland</u> standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. <u>See</u> <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

<u>Knowles v. Mirzayance</u>, 129 S.Ct. 1411, 1420 (2009); <u>see</u> <u>also</u> <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004) ("In addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference--this one to

a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision.").

## VII. Findings of Fact and Conclusions of Law

### A. Ground One

Petitioner claims that Robert W. Mason, his defense counsel, was ineffective for failing to obtain an expert on drug addiction to testify at trial in support his voluntary intoxication defense.[8] As acknowledged by the parties, Petitioner raised this ground in his Rule 3.850 motion. This issue was addressed at the state court evidentiary hearing, at which Robert Mason and Petitioner testified.[9] After the evidentiary hearing, the trial court identified the two-prong Strickland ineffectiveness test as the controlling law and denied the Rule 3.850 motion with respect to this issue, stating in pertinent part:

> In the Defendant's first ground for relief, he alleges that counsel, Robert Mason, rendered ineffective assistance for failing to request and/or obtain an expert witness to testify at trial regarding the Defendant's

---

[8] Although the law has since changed, see Fla. Stat. § 775.051 (1999), voluntary intoxication was a defense available to negate specific intent at the time of the offense. Pooler v. State, 980 So.2d 460, 464 n.3 (Fla. 2008) (citing Gardner v. State, 480 So.2d 91 (Fla. 1985)), cert. denied, 129 S.Ct. 255 (2008). To successfully assert the defense, the defendant had to come forward with evidence of intoxication at the time of the offense sufficient to establish that he was unable to form the intent necessary to commit the crime charged. See Reaves v. State, 826 So.2d 932, 938-39 (Fla. 2002).

[9] Petitioner was represented by counsel (James Hernandez) at the state court evidentiary hearing. See EH Tr. at 2.

drug and alcohol use and the effects of
prolong[ed] usage on an individual's mental
state. The Defendant testified at the
evidentiary hearing regarding his desire to
have an expert witness testify at trial. The
Defendant testified that he wanted counsel to
obtain an expert witness to testify regarding
cocaine's effect on the mind. (Exhibit "D,"
page 11.) The Defendant testified that he was
evaluated by Dr. Neidigh regarding his drug
use. (Exhibit "D," page 11.) The Defendant
testified:

> Well, I wanted somebody that knew
> more about drugs than I did besides
> just smoking them, you know, and
> because I couldn't explain to the
> extent the things that was [sic]
> happening to me when I was using
> drugs and the things that I wanted
> to do and the things that I did. I
> could have explained if I would have
> had a chance to, but I didn't, but I
> know an expert could explain more
> extent to the effect of the drugs
> than I could, you know, whole time I
> was smoking them. I could tell now
> the effect that they use [sic] on me
> or that they did to me by smoking
> the drugs and the things that I did.

(Exhibit "D," page 12.)

On cross-examination, the Defendant
testified that he was able to discuss his drug
use leading up to the commission of the
instant offenses when he testified at trial.
(Exhibit "D," pages 14-15.) The Defendant
testified that the defense presented the
testimony of Mr. Ricks, Mr. Schaedle and Mr.
Dixon at trial, and testified that their
testimony concerned their observations of the
Defendant's drug use. (Exhibit "D," pages 15-
16.)

The Defendant's trial counsel, Robert
Mason, testified at the evidentiary hearing.
Mr. Mason testified that he had the Defendant

evaluated by Dr. Larry Neidigh and
specifically inquired to Dr. Neidigh the
possibility of an [sic] voluntary intoxication
defense. (Exhibit "D," pages 23-25.) Mr.
Mason testified that based on Dr. Neidigh's
report he was not able to use Dr. Neidigh as
an expert at trial. (Exhibit "D," page 25.)
Mr. Mason testified that Dr. Neidigh's
evaluation found no basis to support a
voluntary intoxication defense as there were
no indications that the Defendant was unaware
of his behavior or its consequences. (Exhibit
"D," pages 25-26.) On cross-examination, Mr.
Mason testified that he chose not to get a
second opinion after receiving Dr. Neidigh's
report and that if he thought he needed a
second opinion he would have requested one.
(Exhibit "D," page 38.)

This Court specifically finds Mr. Mason's
testimony both more credible and more
persuasive than the Defendant's testimony and
allegations. <u>Laramore v. State</u>, 699 So.2d 846
(Fla. 4th DCA 1997). Counsel had the Defendant
evaluated by Dr. Neidigh for purposes of
presenting a voluntary intoxication defense.
Counsel made a tactical decision not to call
Dr. Neidigh as a defense expert witness
because Dr. Neidigh opined in his report that
there were no indications that the Defendant
was unaware of his behavior or its
consequences. Further, counsel made a tactical
decision to not seek a second expert opinion
and instead focused on other defense witnesses
to present evidence of the Defendant's drug
use and its effect on him. <u>Songer v. State</u>,
419 So.2d 1044 (Fla. 1982); <u>Gonzalez v. State</u>,
579 So.2d 145, 146 (Fla. 3d DCA 1991)
("Tactical decisions of counsel do not
constitute ineffective assistance of
counsel.") Accordingly, the Defendant's
claim is without merit.

Resp. Ex. W at 175-77. Upon Petitioner's appeal, <u>see</u> Resp. Ex. Y,

the appellate court affirmed the denial <u>per curiam</u>, <u>see</u> Resp. Ex.

AA.

As this ineffectiveness claim was rejected on the merits by the state trial and appellate courts, there are qualifying state court decisions. Thus, this claim should be addressed applying the deferential standard for federal court review of state court adjudications required by AEDPA. The Court must next consider the "contrary to" and "unreasonable application" components of the statute. "It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide." Brown v. Head, 272 F.3d 1308, 1313 (11th Cir. 2001), cert. denied, 537 U.S. 978 (2002).

Upon a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Additionally, even assuming that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim is without merit. After the evidentiary hearing, the state court resolved the credibility issue in favor of believing counsel's testimony over that of Petitioner. The Court notes that credibility determinations are questions of fact. See

Martin v. Kemp, 760 F.2d 1244, 1247 (1985) (per curiam) (finding that factual issues include basic, primary, or historical facts, such as external events and credibility determinations). Petitioner has not rebutted the trial court's credibility finding by clear and convincing evidence. See Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Given the trial court's credibility determination, Petitioner's claim is wholly unsupported and therefore must fail.

In evaluating the performance prong of the Strickland ineffectiveness inquiry, there is a strong presumption in favor of competence. The presumption that counsel's performance was reasonable is even stronger when, as in this case, counsel is an experienced criminal defense attorney.[10] The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the

_____

[10] "When courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger." Chandler v. United States, 218 F.3d 1305, 1316 (11th Cir. 2000) (en banc), cert. denied, 531 U.S. 1204 (2001); see Williams v. Head, 185 F.3d 1223, 1229 (11th Cir. 1999) (noting that "[i]t matters to our analysis" whether the attorney is an experienced criminal defense attorney), cert. denied, 530 U.S. 1246 (2000). Robert William Mason was admitted to the Florida Bar in 1990. See http://www.floridabar.org. At the time of Petitioner's criminal trial in 1997, Mason had been practicing criminal law and had been employed with the Public Defender's Office for over seven years. EH Tr. at 20-21.

time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" <u>Rompilla v. Beard</u>, 545 U.S. 374, 381 (2005) (citations omitted). Thus, Petitioner must establish that no competent attorney would have taken the action that counsel, here, chose. <u>United States v. Freixas</u>, 332 F.3d 1314, 1319-20 (11th Cir. 2003). Here, counsel's performance was not deficient. <u>See</u> EH Tr. at 22-26; Response at 9-11.

Petitioner wanted testimony from an expert who could testify at the trial about his drug use and the effects of the prolonged usage on his mental state at the time of the offense. <u>See</u> EH Tr. at 11-12. This testimony would not have been relevant to the voluntary intoxication defense. Defense counsel made a tactical decision not to call Dr. Neidigh, as a defense expert witness, because Dr. Neidigh believed that Petitioner "had clear goal reflected behavior" at the time of the offenses and opined in his report that "there are no indications that [Petitioner] was unaware of the behavior he was committing or the consequences of it." <u>Id</u>. at 25-26. Further, defense counsel made a tactical decision not to seek a second expert opinion and instead focused on other defense

witnesses[11] to present evidence of Petitioner's drug use and its effect on him. Id. at 26-27, 38.

Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice. Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given the assistance that Petitioner has alleged he should have provided. Petitioner testified at the trial regarding his drug use leading up to the commission of the crimes, see Tr. at 408-55, and defense counsel called Joe Ricks, George Dixon and Paul Schaedel to testify regarding Petitioner's drug use. Petitioner's ineffectiveness claim is without merit since Petitioner has not shown both deficient performance and the resulting prejudice.

## B. Ground Two

As ground two, Petitioner claims that counsel was ineffective for failing to file an adequate motion to suppress Petitioner's confession. As acknowledged by the parties, Petitioner raised this ground in his Rule 3.850 motion, and the issue was addressed at the state court evidentiary hearing. Both Petitioner and defense

---

[11] Defense counsel presented the testimony of Joe Ricks and George Dixon, who testified at trial regarding Petitioner's crack cocaine addiction and his behavior, see Tr. at 379-84, 399-404, but neither saw Petitioner on the day he committed the crimes (August 4, 1997), see id. at 383-84, 403, 404. Additionally, defense counsel called one of the four victims, Paul Schaedel, who testified regarding Petitioner's behavior during the commission of the offenses. See id. at 385-94.

counsel testified with respect to this issue. After the evidentiary hearing, the trial court identified the two-prong <u>Strickland</u> ineffectiveness test as the controlling law and denied the Rule 3.850 motion with respect to this issue, stating in pertinent part:

> In the Defendant's second ground for relief, he alleges that counsel was ineffective for failing to move to suppress the Defendant's confession and any other statements made to the Jacksonville Sheriff's Office. The Defendant alleges that he informed counsel that he was under the influence of crack cocaine and alcohol when he made his confession and statements. The Defendant argues that counsel should have sought to suppress his confession and statements on the grounds that they were not knowingly and voluntarily made. Mr. Mason testified at the evidentiary hearing concerning the instant claim. Mr. Mason testified that he made an oral motion to suppress the Defendant's statement during the trial and that a hearing was held during the trial on that oral motion. (Exhibit "D," page 29.) Prior to the commencement of the Defendant's trial, the Court noted for the record that the defense was going to request an oral motion to suppress the confession of the Defendant to be heard during the trial. (Exhibit "E," pages 154-155.) During the testimony of Officer Rusty Rogers, the State proffered the Defendant's confession outside the presence of the jury and the Court ruled that the Defendant freely, voluntarily, knowingly and intelligently waived his <u>Miranda</u> rights and voluntarily made the statements. (Exhibit "E," pages 275-283.) Accordingly, the Defendant cannot establish error on the part of counsel for failing to move to suppress the Defendant's statements to the Jacksonville Sheriffs Office since counsel in fact sought to suppress those statements as being not

freely and voluntarily made. <u>Strickland</u>. Therefore, the instant claim is without merit.

Resp. Ex. W at 177-78. Upon Petitioner's appeal, <u>see</u> Resp. Ex. Y, the appellate court affirmed the denial <u>per curiam</u>, <u>see</u> Resp. Ex. AA.

Accordingly, this ineffectiveness claim was rejected on the merits by the state trial and appellate courts. As there are qualifying state court decisions, this claim will be addressed applying the deferential standard for federal court review of state court adjudications required by AEDPA. After a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor were they based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Even assuming that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim is without merit. At the evidentiary hearing, defense counsel testified that he made an oral motion to suppress Petitioner's statements during the trial and that a hearing was held during the trial on that oral motion. EH Tr. at 29. Prior to the commencement of the trial, the trial judge stated: "I'll put on the record that the defense is going to request an oral motion to

suppress the confession of the defendant . . . to be heard during the trial . . . ." Tr. at 154. Further, the trial judge ordered the State to "proffer [the confession] so the defense will have full opportunity to have that issue heard outside the presence of the jury." Id. at 154-55. During the testimony of Officer Rusty Rogers, the State proffered the circumstances surrounding Petitioner's confession outside the presence of the jury, and the trial judge ruled that Petitioner freely, voluntarily, knowingly and intelligently waived his Miranda[12] rights and voluntarily made the statements. Id. at 275-83. Since the record reflects that counsel sought to suppress Petitioner's statements as being not freely and voluntarily made, defense counsel's performance was not deficient.

Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown any resulting prejudice. At the evidentiary hearing, defense counsel described Petitioner's case and its challenges: "It was a difficult case because the entire action [of the commission of the robberies in the store] was videotaped[13] and additionally Mr. Moore was apprehended at the scene and Mr. Moore also gave a full confession." EH Tr. at 22. Indeed, with the overwhelming evidence of guilt presented by the

---

[12] Miranda v. Arizona, 384 U.S. 436 (1966).

[13] The videotape (with no audio) was shown to the jury. See Tr. at 213-20.

State at the trial,[14] Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given the assistance that Petitioner has alleged he should have provided.

During the burglary and robberies, Petitioner wore a black ski mask to conceal his identity, threatened the victims with what appeared to be a real gun and then taped the legs and hands of some of the victims. <u>See</u> Tr. at 184, 188, 195, 197, 228, 251, 252-53. When Petitioner laid the gun down to tape other victims, the unrestrained victims wrestled and subdued Petitioner, retrieved the gun and held Petitioner at the scene until the police arrived. <u>See</u> <u>id</u>. at 199-200, 235-36, 244, 258-60. When the police removed Petitioner's mask at the scene, the victims saw Petitioner's face. <u>See</u> <u>id</u>. at 185, 229, 252. Additionally, portions of the criminal episode were captured on the store's videotape, which corroborated the testimony of the victims and police officers. <u>Id</u>. at 213-20, 231. Given the overwhelming evidence against Petitioner, Petitioner's statements to the police were merely cumulative, and their admission does nothing to undermine the confidence in the outcome of the trial. Thus, this ineffectiveness claim is without

---

[14] <u>See</u> Tr. at 182-220 (victim's testimony); 224-42 (victim's testimony); 246-64 (victim's testimony); 267-74, 286-93 (responding officer's testimony); 302-10 (evidence technician's testimony); 311-16 (detective's testimony); 327-41 (detective's testimony).

merit since Petitioner has neither shown deficient performance nor resulting prejudice.

## C. Ground Three

As ground three, Petitioner claims counsel was ineffective for allowing Petitioner to testify at the trial without an expert witness to corroborate his testimony as to his drug-induced mental state. As acknowledged by the parties, Petitioner raised this ground in his Rule 3.850 motion. After identifying the two-prong Strickland ineffectiveness test as the controlling law, the trial court denied the Rule 3.850 motion with respect to this issue, stating in pertinent part:

> In the Defendant's third ground for relief, he alleges counsel rendered ineffective assistance by permitting the Defendant to testify at trial without an expert witness to corroborate his testimony as to his mental state. The Defendant argues that counsel failed to have him evaluated by a mental health expert prior to testifying at trial and failed to discourage the Defendant from testifying by educating him in the law relating to the facts he was going to testify about. Initially, this Court notes that defense counsel filed a Motion for Expert Witness to Assist in Preparation of a Defen[se] and the Court granted the Motion and appointed Dr. Larry Neidigh to conduct a mental health examination of the Defendant and report his finding to counsel. (Exhibit "F.") Accordingly, counsel did not fail to have the Defendant evaluated prior to trial.
>
> To the extent the Defendant alleges counsel failed to discourage him from testifying at his trial, the Defendant's claim is without merit. The Defendant testified following the State's case that he and counsel

discussed the advantages and disadvantages of his testifying. (Exhibit "E," pages 357-362.) The Defendant testified that he understood that the decision to testify was solely his decision. (Exhibit "E," page 363.) The Defendant testified that after considering all of the advantages and disadvantages, he freely decided to testify on his own behalf. (Exhibit "E," pages 405-407.) The Defendant's contention that counsel failed to discuss the disadvantages of testifying is knowingly false and frivolous. Further, a defendant may not seek to go behind his sworn testimony in a post conviction motion. <u>Stano v. State</u>, 520 So. 2d 278 (Fla. 1988); <u>Dean v. State</u>, 580 So.2d 808 (Fla. 3d DCA 1991); <u>Bir v. State</u>, 493 So. 2d 55 (Fla. 1st DCA 1986). This Court finds that counsel['s] performance was not deficient. Therefore, the Defendant's claim is without merit.

Finally, to the extent the Defendant alleges that counsel was ineffective for failing to call a mental health expert to testify at trial, the Defendant's claim is without merit. The Defendant testified under oath that he agreed with counsel's decision to call three witnesses, Joe Ricks, Paul Schaedel and George Dixon, none of whom were a mental health expert. (Exhibit "E," pages 361-362, 379-385, 385-394, 399-404.) The Defendant may not go behind his sworn testimony in a post conviction motion. <u>Stano</u>; <u>Dean</u>; <u>Bir</u>. Moreover, counsel testified at the evidentiary hearing that he did not call Dr. Neidigh as a defense witness because Dr. Neidigh's evaluation found no basis to support a voluntary intoxication defense as there were no indications that the Defendant was unaware of the [sic] his behavior or its consequences. (Exhibit "D," pages 25-26.) Counsel made a tactical decision not to call an expert witness at trial. <u>Songer v. State</u>, 419 So.2d 1044 (Fla. 1982); <u>Gonzalez v. State</u>, 579 So.2d 145, 146 (Fla. 3d DCA 1991) ("Tactical decisions of counsel do not constitute ineffective assistance of counsel.") Accordingly, the Defendant has failed to

> establish that counsel's performance was
> outside the wide range of reasonable
> professional assistance. <u>Strickland</u>.

Resp. Ex. W at 178-79. Upon Petitioner's appeal, <u>see</u> Resp. Ex. Y, the appellate court affirmed the denial <u>per curiam</u>, <u>see</u> Resp. Ex. AA.

This ineffectiveness claim was rejected on the merits by the state trial and appellate courts. Thus, as there are qualifying state court decisions, this claim will be addressed applying the deferential standard for federal court review of state court adjudications. Upon a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Moreover, even assuming that the state courts' adjudications of this claim are not entitled to deference, Petitioner's claim is without merit. The record reflects that, prior to trial, defense counsel filed a Motion for Expert Witness to Assist in Preparation of a Defense, and the court granted the motion and appointed Dr. Larry Neidigh to conduct a mental health examination of Petitioner

and to report his findings to defense counsel.[15] As discussed with respect to ground one, Dr. Neidigh evaluated Petitioner prior to the trial, but defense counsel decided not to call him as an expert witness due to his findings. Additionally, Petitioner acknowledged that he and his defense counsel discussed the advantages and disadvantages of his testifying, and Petitioner understood that the decision to testify or not was solely his decision. Tr. at 357-58, 361-63. Petitioner also agreed with counsel's decision to call three lay witnesses on his behalf.[16] Id. at 361-62. In sum, defense counsel's performance was not deficient.

Even assuming _arguendo_ deficient performance by defense counsel, Petitioner has not shown any resulting prejudice. Thus, this ineffectiveness claim is without merit in that Petitioner has not shown both deficient performance and the resulting prejudice.

## D. Ground Four

As ground four, Petitioner claims counsel was ineffective for failing to properly develop a defense of voluntary intoxication. Petitioner raised this ground in his Rule 3.850 motion. Thus, assuming that _pro se_ Petitioner intends to raise the same ineffectiveness claim here that he raised in his Rule 3.850 motion in state court, his ineffectiveness claim is sufficiently

---

[15] _See_ Resp. Ex. W, attached exhibit F, Order Appointing Expert to Examine Defendant.

[16] Defense counsel called Joe Ricks, George Dixon and Paul Schaedel to testify regarding Petitioner's drug use.

exhausted. To the extent that Petitioner has raised additional issues which were not presented in state court, those claims are procedurally barred.[17]  See Response at 19.

After identifying the two-prong _Strickland_ ineffectiveness test as the controlling law, the trial court denied the Rule 3.850 motion with respect to this issue, stating in pertinent part:

> In the Defendant's fourth ground for relief, he alleges that counsel was ineffective for failing to develop and present the defense of voluntary intoxication. The Defendant's claim is knowingly false and frivolous. Initially, this Court notes that counsel stated, during opening statements, that the Defendant had consumed beer, gin, wine, and crack cocaine prior to committing the instant offenses and that although he did in fact commit the instant offenses he did not know what he was doing due to his crack cocaine addiction. (Exhibit "E," pages 177-181.)  The defense presented the testimony [of] Joe Ricks and George Dixon, who testified at trial regarding the Defendant's crack cocaine addiction and his behavior. (Exhibit "E," pages 379-384, 399-404.) The defense also presented the testimony of Paul Scheadel,[18] who testified regarding the Defendant's behavior during the commission of the instant offenses. (Exhibit "E," pages 385-394.) Finally, the Defendant testified at trial regarding his crack cocaine addiction and his behavior at the time he committed the instant offenses. (Exhibit "E," pages 409-455.) Accordingly, the Defendant has failed to establish error on the part of counsel for

---

[17] Petitioner has not shown both cause excusing the default and actual prejudice resulting from the bar.  Furthermore, he has not shown that he is entitled to the fundamental miscarriage of justice exception.

[18] The correct spelling is "Schaedel."  _See_ Tr. at 385.

> failing to prepare and present a voluntary
> intoxication defense at trial since counsel in
> fact presented said defense. <u>Strickland</u>.

Resp. Ex. W at 179-80. Following Petitioner's appeal, <u>see</u> Resp. Ex. Y, the appellate court affirmed the denial <u>per curiam</u>, <u>see</u> Resp. Ex. AA.

This ineffectiveness claim was rejected on the merits by the state trial and appellate courts. Thus, as there are qualifying state court decisions, this claim will be addressed applying the deferential standard for federal court review of state court adjudications. After a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Finally, even assuming that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim is without merit. Defense counsel's performance was not deficient. As previously discussed, <u>see</u> Section VII. A. Ground One, defense counsel had Petitioner evaluated by Dr. Neidigh for purposes of presenting a voluntary intoxication defense. However, counsel decided not to call Dr. Neidigh, as a defense expert,

because Dr. Neidigh opined in his report that there were no indications that Petitioner was unaware of his behavior or its consequences. Since Dr. Neidigh would not have provided beneficial testimony supporting a voluntary intoxication defense, counsel focused on other defense witnesses to present evidence of Petitioner's drug use and its effects on him.

Defense counsel prepared and presented a voluntary intoxication defense by calling Joe Ricks and George Dixon to testify regarding Petitioner's crack cocaine addiction and the effects on his behavior. Further, one of the victims, Paul Schaedel, testified as to Petitioner's behavior during the commission of the robberies. And, finally, Petitioner testified on his own behalf regarding his use of crack cocaine and alcohol and its apparent effects on his behavior during the crimes.

Not only did defense counsel call these witnesses, but counsel also inquired, on cross-examination of Officer Rogers, as to Petitioner's response when asked by rescue personnel if he was under the influence of drugs or alcohol. See Tr. at 294-99. Further, in an effort to point out the effects of crack cocaine, i.e., the "wild mood swings," id. at 488, counsel questioned one of the victims about Petitioner's calmly entering the grocery store and then becoming extremely agitated when the floor buffer would not immediately turn off, id. at 221. During closing argument, defense counsel reminded the jury of the applicability of the

voluntary intoxication defense.  <u>See</u> <u>id</u>. at 485-95.  Specifically,

he concluded:

> I submit to you, you must follow the law in
> this case, that it is an extremely difficult
> case, that you have an incredibly important
> job to do.  But I would submit to you that
> this is not a burglary, this is not a robbery,
> based on Mr. Moore's mental state.  And the
> voluntary intoxication defense, like it or
> not, if you have a reasonable doubt about it,
> you must find Mr. Moore not guilty.

<u>Id</u>. at 492.  As defense counsel prepared and presented a voluntary

intoxication defense,[19] and Petitioner has not shown deficient

performance on counsel's part in presenting this defense, this

ineffectiveness claim is without merit.

## E. Ground Five

As ground five, Petitioner claims that counsel was ineffective

for failing to call Joyce Wright, as a corroborating defense

witness.  Petitioner raised this claim in his Rule 3.850 motion.

Both Petitioner and defense counsel testified regarding this issue

at the evidentiary hearing.  After the evidentiary hearing, the

trial court identified the two-prong <u>Strickland</u> ineffectiveness

---

[19] Even assuming that Petitioner properly exhausted a <u>Cronic</u>
claim in state court, <u>see</u> <u>United States v. Cronic</u>, 466 U.S. 648
(1984), such a claim here is without merit since this is <u>not</u> a case
where there was a complete absence of meaningful representation on
defense counsel's part.  Here, defense counsel presented a
voluntary intoxication defense at trial, and counsel clearly
subjected the prosecution's case to meaningful adversarial testing.
<u>See</u> <u>Philmore v. McNeil</u>, 575 F.3d 1251, 1272 n.14 (11th Cir. 2009)
(citing <u>Cronic</u>, 466 U.S. 648).

test as the controlling law and denied the Rule 3.850 motion with respect to this issue, stating in pertinent part:

> In the Defendant's fifth ground for relief, he alleges that counsel rendered ineffective assistance by failing to call Joyce Wright as a defense witness at trial. The Defendant argues that Ms. Wright would have testified that she knew the Defendant was a crack addict and had previously witnessed the Defendant smoke crack cocaine. The Defendant testified at the evidentiary hearing that he wanted Joyce Wright to testify at his trial that he was a drug addict and that she observed the volume of drugs he consumed on the weekend of the instant offenses. (Exhibit "D," page 8.) The Defendant testified that Mr. Mason told him Ms. Wright was present at his trial, but that she had later left the courthouse. (Exhibit "D," page 9.) The Defendant testified that Ms. Wright told him that she was informed by an unnamed man that if she had any outstanding warrants or capias she would be arrest[ed] and that was why she left. (Exhibit "D," page 9.) On cross-examination, the Defendant testified that Ms. Wright walked into the courtroom but was sent back out into the hallway. (Exhibit "D," page 17.)

> Mr. Mason testified at the evidentiary hearing concerning calling Ms. Wright as a defense witness. Mr. Mason testified that he and his investigator had trouble locating Ms. Wright. (Exhibit "D," page 30.) Mr. Mason testified that Ms. Wright had an outstanding capias or warrant for her arrest and that he was concerned whether she would show up at all. (Exhibit "D," pages 30-31.) Mr. Mason testified that he could not recall ever personally talking to Ms. Wright. (Exhibit "D," page 32.) Mr. Mason testified that he was not able to subpoena Ms. Wright. (Exhibit "D," page 32.) Mr. Mason testified that she was not called as a defense witness because she either never came to the courthouse or left after speaking with a representative of the State. (Exhibit "D," page 33.) Mr. Mason testified

that Ms. Wright's testimony could have been beneficial to the defense because she had been with the Defendant the day of the instant offenses. (Exhibit "D," pages 34-35.)

On cross-examination, Mr. Mason testified that although he did not subpoena Ms. Wright for trial, he did prepare questions to ask her. (Exhibit "D," page 39.) On redirect examination, Mr. Mason testified that there would be no reason to subpoena Ms. Wright if she appeared at the courthouse during the Defendant's trial. (Exhibit "D," page 40.) Mr. Mason, further, testified that Ms. Wright could still have left the courthouse even if he had subpoenaed her to testify at the Defendant's trial. (Exhibit "D," page 40.)

This Court specifically finds Mr. Mason's testimony both more credible and more persuasive than the Defendant's testimony and allegations. <u>Laramore v. State</u>, 699 So.2d 846 (Fla. 4th DCA 1997). Counsel attempted to locate Ms. Wright through his own efforts and those of his investigator but were [sic] unsuccessful in locating Ms. Wright. Accordingly, the Defendant cannot establish error on the part of counsel for failing to call Ms. Wright as a defense witness. Moreover, assuming *arguendo,* that the Defendant's contention that Ms. Wright did appear at the Defendant's trial and then left prior to testifying is correct, the Defendant has failed to establish error on the part of counsel for failing to ensure that Ms. Wright did not leave the courthouse prior to testifying at the Defendant's trial. Accordingly, the Defendant's claim is without merit.

Resp. Ex. W at 180-82. The appellate court affirmed the trial court's denial <u>per</u> <u>curiam</u>.

This ineffectiveness claim was rejected on the merits by the state trial and appellate courts. Thus, as there are qualifying

state court decisions, this claim will be addressed applying the deferential standard for federal court review of state court adjudications. Following a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner Moore is not entitled to relief on the basis of this ineffectiveness claim.

Additionally, even assuming that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim is without merit. Defense counsel's performance was not deficient. After the evidentiary hearing, the state court resolved the credibility issue in favor of believing counsel's testimony over that of Petitioner. Petitioner has not rebutted the trial court's credibility finding by clear and convincing evidence. Given the trial court's credibility determination, Petitioner's claim is wholly unsupported, and therefore the claim must fail.

Defense counsel testified, at the evidentiary hearing, that Petitioner gave him the names of a "Joyce A. Wright" and a "Joyce E. Wright" and that he and his investigator had difficulty locating

the person who was Petitioner's girlfriend. EH Tr. at 30. The defense investigator told defense counsel that when he called or visited the location, someone else said Wright had not been seen for three or four weeks. Id. Moreover, defense counsel's motion for a continuance to allow additional time to locate witnesses was granted by the trial court. Id. at 30-31; Resp. Ex. F, Motion for Continuance, filed November 10, 1997.

Defense counsel noted that "Joyce Wright had some type of outstanding capias or warrant out for her arrest so [they] were concerned [about] whether she would show up" to the trial. EH Tr. at 31. Further, counsel explained that his investigator talked to the Joyce Wright who was the daughter, but that his notes did not show that the investigator had talked to Petitioner's girlfriend. Id. Counsel's notes did not reflect a specific phone call or face-to-face meeting with Joyce Wright, Petitioner's girlfriend. Id. at 32. Finally, counsel did not believe they were able to subpoena Ms. Wright, who "seemed to be on the go when this was happening." Id.

Here, counsel's performance was not deficient. He cannot be faulted for failing to locate a witness after making reasonable efforts to do so. Both he and his investigator made those efforts. And, even assuming arguendo deficient performance by defense counsel, Petitioner has not shown the resulting prejudice. With the overwhelming evidence of guilt presented by the State at the

35

trial, Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different even if defense counsel had presented the testimony of Ms. Wright. See Response at 25 ("Any testimony from Wright could not have shaken the overwhelming evidence of Petitioner's calculated planning and execution of the crimes, including his deliberate use of a mask to conceal his identity, his decision to use what looked like a gun to intimidate his victims, and to tape up his victims in an effort [to] maintain control.") (citations omitted). For these reasons, this ineffectiveness claim is without merit in that Petitioner has not shown both deficient performance and resulting prejudice.

### F. Ground Six

As ground six, Petitioner claims that counsel was ineffective based on the cumulative effect of the errors alleged in grounds one through five. Petitioner raised this ground in his Rule 3.850 motion, and the trial court denied the motion, stating in pertinent part:

> In the Defendant's sixth ground for relief, he alleges that the cumulative effect of his claims in grounds one through five entitle him to relief. As this Court has found the allegations in ground one through five to be without merit, this Court finds that there is no cumulative effect and the instant claim is without merit.

Resp. Ex. W at 182. Following an appeal by Petitioner, the appellate court affirmed the denial per curiam.

Upon a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Moreover, even assuming the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim is without merit.

> As set forth above, [Petitioner] has not demonstrated error by trial counsel; thus, by definition, [Petitioner] has not demonstrated that cumulative error of counsel deprived him of a fair trial. See Yohey v. Collins, 985 F.2d 222, 229 (5th Cir. 1993) (explaining that because certain errors were not of constitutional dimension and others were meritless, petitioner "has presented nothing to cumulate").

Miller v. Johnson, 200 F.3d 274, 286 n.6 (5th Cir.), cert. denied, 531 U.S. 849 (2000). Petitioner is not entitled to relief on the basis of this cumulative error claim.

## G. Ground Seven

As ground seven, Petitioner challenges the sufficiency of the evidence, claiming that the four convictions and sentences for armed robbery with a weapon and with concealed identity are illegal because the State did not establish the essential elements of the

offenses by prima facie evidence.  Petitioner raised this ground in

his Rule 3.850 motion, which the trial court denied, stating in

pertinent part:

> In the Defendant's seventh ground for
> relief, he alleges that his four convictions
> and sentences for Armed Robbery with a Weapon
> and with Concealed Identity are illegal
> because the State did not establish the
> essential elements of the offense[s] by prima
> facie evidence.  The Defendant is attempting
> to challenge the sufficiency of the evidence
> against him introduced at trial.  The
> Defendant may not challenge the admissibility,
> validity, or sufficiency of the evidence
> against him in a motion seeking post
> conviction relief.  Betts v. State, 792 So.2d
> 589 (Fla. 1st DCA 2001);[20] Jackson v. State,
> 640 So.2d 1173 (Fla. 2d DCA 1994).

Resp. Ex. W at 182.  Upon Petitioner's appeal, the appellate court

affirmed the trial court's decision, without stating the basis for

its determination.

Respondents contend, see Response at 26-28, and this Court

agrees, that Petitioner's claim for relief is procedurally barred.

The Eleventh Circuit Court of Appeals has stated:

> The Supreme Court has provided clear
> guidance on how to construe a summary or
> unexplained state court decision. In Ylst v.
> Nunnemaker, the Court held that when a state

---

[20] See Betts v. State, 792 So.2d 589, 590 (Fla. 1st DCA 2001)
("To the extent that the allegations challenged the factual basis
and sufficiency of the evidence, such claims cannot be raised in a
Rule 3.850 motion, especially where (as occurred in the instant
case) a direct appeal was taken.") (citation omitted).  In the
instant case, a direct appeal was taken, and the appellate court
affirmed Petitioner's convictions and sentences per curiam.  See
Moore v. State, 729 So.2d 541 (Fla. 1st DCA 1999); Resp. Ex. Q.

appellate court affirms a lower court's ruling
without articulating its reasons for doing so,
we should apply "the following presumption:
Where there has been one reasoned state
judgment rejecting a federal claim, later
unexplained orders upholding that judgment or
rejecting the same claim rest upon the same
ground." 501 U.S. 797, 803, 111 S.Ct. 2590,
115 L.Ed.2d 706 (1991). The Court explained
that in the context of a summary affirmance,
"silence implies consent"; appellate courts
generally "affirm[] without further discussion
when they agree, not when they disagree, with
the reasons given below." <u>Id</u>. at 804, 111
S.Ct. 2590. In short, "[t]he essence of
unexplained orders is that they say nothing.
We think that a presumption which gives them
*no* effect – which simply 'looks through' them
to the last reasoned decision – most nearly
reflects the role they are ordinarily intended
to play." <u>Id</u>.; <u>see</u> <u>also</u> <u>Glock v. Singletary</u>,
65 F.3d 878, 882 n.4 (11th Cir. 1995) (en
banc) (holding that "[w]hen the last state
court to consider the claim summarily denies
relief, we look to the last state court to
address the claim to determine" if it
considered the claim procedurally defaulted);
<u>Harmon v. Barton</u>, 894 F.2d 1268, 1273 (11th
Cir. 1990) (noting that the "clear inference"
to be drawn from a per curiam affirmance
without written opinion is that the appellate
court "accepted not only the judgment but the
reasoning of the trial court"). The Supreme
Court made clear, however, that the
presumption is rebuttable; "strong evidence
can refute it." <u>Ylst</u>, 501 U.S. at 804, 111
S.Ct. 2590.

<u>Sweet v. Sec'y, Dep't of Corr.</u>, 467 F.3d 1311, 1316-17 (11th Cir.

2006), <u>cert</u>. <u>denied</u>, 550 U.S. 922 (2007). As the state court found

this claim to be procedurally barred, this Court presumes that the

appellate court did not reach the merits of the claim, and thus

Petitioner has procedurally defaulted this claim.

"A federal court may still address the merits of a procedurally defaulted claim if the petitioner can show cause for the default and actual prejudice resulting from the alleged constitutional violation." <u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010) (citation omitted). In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if he can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." <u>Carrier</u>, 477 U.S. at 496, 106 S.Ct. at 2649.[21] "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir.2001).

<u>Id</u>. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)), <u>cert</u>. <u>denied</u>, 535 U.S. 926 (2002). Additionally,

---

[21] <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

"'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderson v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

Here, Petitioner has not shown both cause excusing the default and actual prejudice resulting from the bar. Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception. Thus, the Court will not address the merits of the claim.[22]

## H. Ground Eight

As ground eight, Petitioner again relying on the insufficiency of the evidence, claims that the conviction and sentence for armed burglary of an occupied structure with a dangerous weapon and concealed identity are illegal because the State did not establish the essential elements of the offense by prima facie evidence. Petitioner raised this ground in his Rule 3.850 motion, which the trial court denied, stating in pertinent part:

> In the Defendant's eighth ground for relief, he alleges that his conviction and sentence for Armed Burglary of an Occupied Structure with a Dangerous Weapon and

_____

[22] Nevertheless, the Court notes that the jury's finding that Petitioner committed the robberies with a "weapon," Resp. Ex. I, Verdicts, is fully supported by the evidence adduced at the trial. See Tr. at 184-201, 209, 213-20, 227-37, 251-64, 307.

> Concealed Identity are illegal because the
> State did not establish the essential elements
> of the offense by prima facie evidence. The
> Defendant is attempting to challenge the
> sufficiency of the evidence against him
> introduced at trial. The Defendant may not
> challenge the admissibility, validity, or
> sufficiency of the evidence against him in a
> motion seeking post conviction relief. <u>Betts
> v. State</u>, 792 So.2d 589 (Fla. 1st DCA 2001);
> <u>Jackson v. State</u>, 640 So.2d 1173 (Fla. 2d DCA
> 1994).

Resp. Ex. W at 182. Following Petitioner's appeal, the appellate court affirmed the denial <u>per</u> <u>curiam</u>.

Once again, Respondents contend, <u>see</u> Response at 28-29, and this Court agrees, that Petitioner's claim for relief is procedurally barred. Additionally, as with the robbery convictions, Petitioner has not shown both cause excusing the default and actual prejudice resulting from the bar. Moreover, he has not identified any circumstances warranting application of the fundamental miscarriage of justice exception. Thus, the Court will not address the merits of the claim.[23]

## I. Ground Nine

As ground nine, Petitioner claims that the state trial court erred in determining Petitioner's sentence because the instant

---

[23] The jury's finding that Petitioner committed the burglary with a "dangerous weapon," <u>see</u> Resp. Ex. I, Verdict, is supported by the evidence adduced at the trial. <u>See</u> Tr. at 184-201 (testimony of Roger Williams, Jr.), 356, 518 (court's instructing the jury that "a dangerous weapon is any weapon that, taking into account the manner in which it is used, is likely to produce death or great bodily harm"); Sentencing Tr. at 232-33.

offenses occurred more than five years after his release on parole for a prior offense. Petitioner raised this ground in his Rule 3.850 motion, which the trial court denied, stating in pertinent part:

> In the Defendant's ninth ground for relief, he alleges that the trial court erred by relying on a non-qualifying offense for habitualization purposes. The Defendant's instant claim could or should have been raised on direct appeal and is thus procedurally barred. <u>Harvey v. Dugger</u>, 656 So.2d 1253 (Fla. 1995); <u>Cherry v. State</u>, 659 So.2d 1069 (Fla. 1995).

Resp. Ex. W at 182-83. Following an appeal by Petitioner, the appellate court affirmed the denial <u>per curiam</u>.

Respondents contend that this claim is procedurally defaulted; however, they acknowledge that Petitioner also raised the claim on direct appeal. <u>See</u> Response at 30. Since Petitioner raised this claim on direct appeal (ground one), <u>see</u> Resp. Ex. O at 22-25, and the appellate court affirmed Petitioner's convictions and sentences <u>per curiam</u>, <u>see</u> <u>Moore</u>, 729 So.2d 541; Resp. Ex. Q, this claim has been sufficiently exhausted and is not procedurally defaulted.

On direct appeal, Petitioner argued that the trial court erred in sentencing him as a PRR, VCC, and HVFO because the instant offenses occurred more than five years after his release on parole for a prior offense. <u>See</u> Resp. Ex. O at 22. The State filed an Answer Brief, addressing this claim on the merits. <u>See</u> Resp. Ex. P at 4-10. Thus, to the extent that Petitioner is raising, in

ground nine, the same claim he presented on direct appeal, such a claim presents an issue of purely state law that is not cognizable on federal habeas review. See Response at 30-31. The purpose of a federal habeas proceeding is the review of the lawfulness of Petitioner's custody to determine whether that custody is in violation of the Constitution or laws or treaties of the United States.[24] Coleman v. Thompson, 501 U.S. 722, 730, reh'g denied, 501 U.S. 1277 (1991). Federal habeas relief does not lie for errors of state law. Indeed, it is not the province of a federal habeas court to reexamine state-court determinations on issues of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Even assuming that Petitioner raised the instant claim as a federal constitutional claim on direct appeal, the State, in its appellate brief, addressed the merits of the claim. See Resp. Ex. P at 4-10. Thus, the appellate court may have affirmed Petitioner's conviction based on the State's argument on the merits. Assuming that the appellate court addressed the merits, Petitioner is not entitled to relief because the state appellate court's adjudication of this claim is entitled to deference under

---

[24] A federal district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

AEDPA.[25]  After a thorough review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

## J. Ground Ten

As ground ten, Petitioner claims defense counsel was ineffective for failing to investigate and challenge the validity of the prior convictions used to qualify him for sentencing as a PRR, VCC, and HVFO.  Petitioner raised this ground in his Rule 3.850 motion (as grounds ten, twelve and fourteen).  In ground ten of his Rule 3.850 motion, Petitioner alleged that counsel was ineffective for failing to investigate, prepare and argue that his prior convictions did not qualify him for sentencing as a PRR, VCC, and HVFO because none showed that his prior release from prison occurred within five years of his having committed the crimes for which he was then being sentencing.  Resp. Ex. V at 84-91.  The

---

[25] For a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling.  Wright, 278 F.3d at 1255.

trial court denied the Rule 3.850 motion with respect to the issue, stating in pertinent part:

> Initially, this Court notes that the defense stipulated that the Judgment and Sentencing Orders relied upon by the State were the Defendant's. (Exhibit "G," page 9.) The defense also stipulated that the Defendant had not "received a pardon for either offense or that either offense has been set aside on any post-conviction proceeding." (Exhibit "G," pages 8-9.) Moreover, counsel presented caselaw [sic] and argued that Defendant's last release from incarceration for Alachua County Case No.: 76-810-CF occurred in February of 1991, and not on November 8, 1995. (Exhibit "H," pages 16-27.) The Court held that the Defendant's last release date in Case No.: 76-810-CF was on November 8, 1995,[26] and, therefore, within five years of the commission of the instant offenses. (Exhibit "H," page 27.)[27] Accordingly, the Defendant has failed to establish error on the part of counsel or prejudice to his case. Strickland, 466 U.S. 668.

Resp. Ex. W at 183. On Petitioner's appeal, the appellate court affirmed the denial per curiam.

After a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the

---

[26] See http://www.dc.state.fl.us/ActiveInmates (Corrections Offender Network website for the Florida Department of Corrections).

[27] See Sentencing Tr. at 238-49.

facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Additionally, even assuming that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim is without merit. Defense counsel argued and presented case law in support of his position that, under Florida law governing sentencing as a PRR, HVFO, and VCC, Petitioner's last date of release was on February 12, 1991, and not on November 8, 1995. See Sentencing Tr. at 191-96, 238-49. After hearing arguments from both defense counsel and the prosecutor, the trial judge found that the applicable prison release date for purposes of PRR, HVFO, and VCC sentencing was November 8, 1995, see id. at 249, which was within five years of the commission of the instant offenses (August 4, 1997).[28] Based on the record before this Court, this ineffectiveness claim is without merit in that Petitioner has shown neither deficient performance nor resulting prejudice.

---

[28] In ground nine, Petitioner claims that the state trial court erred in sentencing him because the instant offenses occurred more than five years after his release on parole for a prior offense. See Section VII. I. Ground Nine. On direct appeal, Petitioner raised the trial court error claim, see Resp. Ex. O at 22-25; the State responded, Resp. Ex. P at 4-10; and the appellate court affirmed Petitioner's convictions and sentences per curiam, see Moore, 729 So.2d 541; Resp. Ex. Q.

Further, Petitioner addressed portions of this claim in grounds twelve and fourteen of his Rule 3.850 motion. As grounds twelve and fourteen, Petitioner alleged that counsel was ineffective for failing to prepare and argue at sentencing that each of his three prior felony convictions on which the State relied to qualify him as a PRR, HVFO, and VCC were unconstitutionally obtained or otherwise unreliable and defective. Resp. Ex. V at 110-26, 137-48. The trial court denied the Rule 3.850 motion with respect to this issue, stating in pertinent part:

> Finally, the Defendant has not established that his prior convictions are invalid. The Defendant is attempting to challenge the validity of the three prior felony convictions utilized by the State in classifying him as a Habitual Felony Offender, Violent Career Criminal and a Prison Releasee Reoffender. **The Defendant may not challenge the validity of those convictions in the instant case.** Accordingly, the Defendant has not established that counsel's performance was deficient for failing to argue that his prior felony convictions were invalid. Id

Resp. Ex. W at 183-84 (emphasis added). Upon Petitioner's appeal, the appellate court affirmed the denial per curiam.

Thus, to the extent that Petitioner is attempting to challenge the validity of the three prior felony convictions used by the State in classifying him as a HVFO, VCC, and PRR, Respondents contend, see Response at 33-35, and this Court agrees, that Petitioner's claim for relief is procedurally barred. Petitioner has not shown both cause excusing the default and actual prejudice

resulting from the bar. Additionally, he has failed to identify any circumstances warranting application of the fundamental miscarriage of justice exception. Thus, the Court will not address the merits of the claim.

However, with respect to Petitioner's assertion that counsel was ineffective for failing to prepare and argue at sentencing that each of his three prior felony convictions on which the State relied to qualify him as a PRR, HVFO, and VCC were unconstitutionally obtained or otherwise unreliable and defective, this ineffectiveness claim was rejected on the merits by the state trial and appellate courts. Thus, this claim should be addressed applying the deferential standard for federal court review of state court adjudications. Upon a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

And, finally, with respect to his claim that defense counsel was ineffective for stipulating at sentencing that these prior convictions belonged to Petitioner and that none were pardoned or set aside, see Sentencing Tr. at 186-87, Respondents contend, see

Response at 36-37, and this Court agrees, that Petitioner's claim for relief is procedurally barred. Petitioner raised the claim, for the first time, in his initial brief on appeal from the denial of the Rule 3.850 motion. <u>See</u> Resp. Ex. Y at 26. Petitioner has not shown both cause excusing the default and actual prejudice resulting from the bar. Moreover, he has not shown any circumstances warranting the application of the fundamental miscarriage of justice exception. Thus, the Court will not address the merits of the claim.

### K. Ground Eleven

As ground eleven, Petitioner challenges the sufficiency of the evidence, supporting the four convictions and sentences for armed robbery with a weapon and with concealed identity, arguing that the convictions are illegal because the State failed to prove he possessed a "deadly weapon." This claim is essentially the same issue addressed in ground seven, but more narrowly tailored to focus on proof of one specific element: the possession of a "deadly weapon." <u>See</u> Section VII. G. Ground Seven. Petitioner raised this ground in his Rule 3.850 motion, which the trial court denied, stating in pertinent part:

> In the Defendant's eleventh ground for relief, he alleges that his four convictions and sentences for Armed Robbery with a Weapon and with Concealed Identity are illegal because the State failed to prove the essential element of the crime, namely that the Defendant possessed a "deadly weapon." The Defendant is attempting to challenge the

> sufficiency of the evidence against him introduced at trial. The Defendant may not challenge the admissibility, validity, or sufficiency of the evidence against him in a motion seeking post conviction relief. <u>Betts v. State</u>, 792 So.2d 589 (Fla. 1st DCA 2001);[29] <u>Jackson v. State</u>, 640 So.2d 1173 (Fla. 2d DCA 1994).

Resp. Ex. W at 184. Following an appeal by Petitioner, the appellate court affirmed the denial <u>per curiam</u>.

Respondents contend, <u>see</u> Response at 37-39, and this Court agrees, that Petitioner's claim for relief is procedurally barred. Petitioner has not shown both cause excusing the default and actual prejudice resulting from the bar. Moreover, he has not shown any circumstances warranting the application of the fundamental miscarriage of justice exception. Thus, the Court will not address the merits of the claim.[30]

## L. Ground Twelve

As ground twelve, Petitioner claims that defense counsel was ineffective for failing "to assure" that Petitioner's trial was open to the public. Petition at 27. Respondents contend that Petitioner, in his Rule 3.850 motion, never framed his claim of the

---

[29] A direct appeal was taken, and Petitioner had the opportunity to raise the issue. The appellate court affirmed Petitioner's convictions and sentences <u>per curiam</u>. <u>See</u> <u>Moore</u>, 729 So.2d 541; Resp. Ex. Q.

[30] The Court notes that Petitioner was not convicted of robbery with a deadly weapon, but of four counts of robbery with a weapon. As previously noted, the jury's findings, <u>see</u> Resp. Ex. I, Verdicts, are supported by the evidence adduced at the trial. <u>See</u> Tr. at 184-201, 209, 213-20, 227-37, 251-64, 307.

denial of a public trial as one of counsel's ineffectiveness, <u>see</u> Response at 39-40; however, this Court disagrees. Petitioner sufficiently asserted the ineffectiveness claim in his Rule 3.850 motion, <u>see</u> Resp. Ex. V at 135, and the trial court construed his assertions as an ineffectiveness claim. Therefore, this Court finds Respondents' procedural default argument to be unavailing.

This ineffectiveness issue was addressed at the state court evidentiary hearing. After the evidentiary hearing, the trial court, having identified <u>Strickland</u> as the controlling law, denied the Rule 3.850 motion with respect to this issue, stating in pertinent part:

> In the Defendant's thirteenth ground for relief, he alleges that counsel rendered ineffective assistance of counsel by failing to object to the courtroom procedures where no spectators were permitted in the courtroom throughout the trial. The Defendant alleges that the Court closed the courtroom throughout his trial and that counsel should have objected to this. The Defendant testified at the evidentiary hearing regarding ground thirteen. The Defendant testified that during his trial when his witnesses attempted to enter the courtroom that a courtroom bailiff would block the door and tell them that no one was allowed in. (Exhibit "D," page 10.) The Defendant, further, testified that he saw several people he did not know attempt to enter the courtroom and were turned away. (Exhibit "D," page 10.)
>
> Mr. Mason testified at the evidentiary hearing regarding the Defendant's claim that spectators were excluded from the courtroom. Mr. Mason testified that he filed a written

motion to exclude witnesses[31] in order to invoke the Rule of Sequestration to prevent witnesses from entering the courtroom prior to testifying in the Defendant's trial. (Exhibit "D," page 35.) Mr. Mason testified that he did not recall that anyone other than potential witnesses were excluded from the courtroom during the Defendant's trial. (Exhibit "D," page 35.)

This Court specifically finds Mr. Mason's testimony both more credible and more persuasive than the Defendant's testimony and allegations. <u>Laramore v. State</u>, 699 So.2d 846 (Fla. 4th DCA 1997). The Defendant failed to present evidence that the Court improperly excluded spectators from the courtroom during his trial. This Court finds that potential witnesses were properly excluded from the courtroom during the trial pursuant to the Rule of Sequestration at the request of defense counsel. <u>See</u> <u>Gore v. State</u>, 599 So.2d 978 (Fla. 1992). Accordingly, the Defendant has failed to establish that counsel was deficient for failing to object to the alleged improper closure of the courtroom to spectators throughout the trial. <u>Strickland</u>, 466 U.S. 668.

Resp. Ex. W at 184-85. Following an appeal by Petitioner, the appellate court affirmed the denial <u>per</u> <u>curiam</u>.

As this ineffectiveness claim was rejected on the merits by the state trial and appellate courts, there are qualifying state court decisions. Thus, this claim will be addressed applying the deferential standard for federal court review of state court adjudications. After a thorough review of the record and the applicable law, the Court concludes that the state courts'

---

[31] <u>See</u> Resp. Ex. C, Motion to Exclude Witnesses.

adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Moreover, even assuming that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim is without merit. Defense counsel's performance was not deficient. See EH Tr. at 35. After the evidentiary hearing, the state court resolved the credibility issue in favor of believing counsel's testimony over that of Petitioner. Petitioner has not rebutted the trial court's credibility finding by clear and convincing evidence. Given the trial court's credibility determination, this Court finds Petitioner's claim to be wholly unsupported, and therefore the claim must fail. As such, Petitioner's ineffectiveness claim is without merit as he has not shown deficient performance by counsel. See EH Tr. at 35; see Tr. at 203 (the trial court's referring to the invoking of the rule of sequestration); see Resp. Ex. C, Motion to Exclude Witnesses.

## M. Ground Thirteen

As ground thirteen, Petitioner claims counsel was ineffective for failing to object to the court's not administering the oath to the prospective jurors. As acknowledged by the parties, Petitioner

raised this ground in his Rule 3.850 motion, which the trial court

denied, stating in pertinent part:

> In the Defendant's fifteenth ground for
> relief, he alleges that counsel was
> ineffective for failing to object to the
> Court['s] failing to administer the oath to
> the prospective jurors prior to the
> commencement of voir dire. The First District
> Court of Appeal addressed the underlying issue
> in Lott v. State, 826 So.2d 457 (Fla. 1st DCA
> 2002). In Lott, the Court stated:
>
>> . . . the defendant has merely
>> alleged that the preliminary oath
>> was not given in the courtroom by
>> the trial judge. He has not alleged
>> that the jurors failed to take the
>> oath. In many Florida courts, the
>> preliminary oath is administered to
>> the venire in a jury assembly room,
>> before the jurors are questioned
>> about their legal qualifications and
>> before they are divided into smaller
>> groups for questioning in individual
>> cases. See Pena v. State, 27 Fla.
>> L. Weekly D1524 (Fla. 2d DCA July 3,
>> 2002); Gonsalves v. State, 26 Fla.
>> L. Weekly D2530 (Fla. 2nd DCA October
>> 19, 2001).[32] Rule 3.300(a) does
>> not require that the preliminary
>> oath be given at a particular time
>> or that it be given more than once.
>> If the jurors have taken the oath in
>> the jury assembly room, they need
>> not take it again in the courtroom.

---

[32] This opinion was withdrawn and superseded on rehearing in part by Gonsalves v. State, 830 So.2d 265, 266 (Fla. 2nd DCA 2002) (stating that the record was sufficient to demonstrate that prospective jurors were sworn prior to questioning; "In order to make a record on appeal that reflects compliance with rule 3.300(a), we encourage trial judges to include on the record either the swearing of the prospective jurors or to recite that the prospective jurors were properly sworn prior to questioning.") (citation omitted).

> We are unable to determine whether
> the jury in this case had taken the
> preliminary oath earlier in the day,
> but the defendant did not eliminate
> this possibility in his motion.

826 So.2d at 458 (Fla. 1st DCA 2002). The
Court further stated:

> [t]he defendant is unable to show
> prejudice arising from his counsel's
> silence in the face of the trial
> court's failure to administer the
> oath, because he can not show that
> the results of the proceeding would
> have been different had counsel
> objected. He does not claim, for
> example, that an unsworn juror
> provided false information and that
> the defendant would likely have
> prevailed at trial with a different
> juror.

> Id. at 459. Further, the Florida Supreme Court
> recently held that even where there is no
> evidence in the record that the venire was
> sworn, no fundamental error occurred. Bolin
> v. State, 869 So.2d 1196, 1202 (Fla. 2004),
> citing Smith v. State, 866 So.2d 51, 64 (Fla.
> 2004). Here, the Defendant has failed to
> establish error on the part of counsel or
> prejudice to his case as required by
> Strickland. Moreover, consistent with Bolin
> and Smith, the Defendant is entitled to no
> relief for this Court's failure to give the
> venire an oath on the record or for counsel's
> failure to object.

Resp. Ex. W at 185-86. Upon Petitioner's appeal, the appellate

court affirmed the denial per curiam.

As this ineffectiveness claim was rejected on the merits by

the state trial and appellate courts, it will be addressed applying

the deferential standard for federal court review of state court

adjudications. After a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

Additionally, even assuming the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim is without merit. At the commencement of voir dire, the court addressed the venire:

> THE COURT: So, knowing that, I take you back to a few -- maybe an hour ago, two hours ago, when one of my fellow judges spoke to you downstairs, the fellow judge that was downstairs should have, number one, placed you all under oath. Is that correct? Everybody was placed under oath?
>
> (Affirmative response from prospective jurors.)
>
> THE COURT: That oath will continue throughout this entire proceeding today.

Resp. Ex. G at 7. Thus, with the venire's having affirmatively acknowledged, in the presence of defense counsel in open court, that it had previously been sworn[33] and with the court's

---

[33] See <u>Lott</u>, 826 So.2d at 458 ("Rule 3.300(a) does not require that the preliminary oath be given at a particular time or that it be given more than once. If the jurors have taken the oath in the

admonishment that its oath would continue to be in force throughout the voir dire, defense counsel's lack of objection was not unreasonable and does not constitute deficient performance under Strickland. Petitioner, in his Rule 3.850 motion, acknowledged that the venire "panel was sworn in by another judge in another area of the courthouse two or more hours earlier . . . ." Resp. Ex. V at 161. Thus, the ineffectiveness claim is without merit since Petitioner has shown neither deficient performance nor resulting prejudice. See Response at 44-46.

## N. Ground Fourteen

As ground fourteen, Petitioner claims he was denied a fair trial because he was required to be in handcuffs and shackles in front of the jury during the entire trial. As acknowledged by the parties, Petitioner raised this ground in his Rule 3.850 motion,[34] which the trial court denied, stating in pertinent part:

> In the Defendant's sixteenth ground for relief, he alleges that his convictions are illegal on a fundamental error ground because he was in handcuffs and shackles in front [of] the jury during his entire trial. In support of the Defendant's contention that he remained in shackles for the entire trial, he alleges that following the other defense witnesses, he

jury assembly room, they need not take it again in the courtroom."), rev. denied, 845 So.2d 891 (Fla. 2003).

[34] Respondents contend that this claim is procedurally defaulted because it could have and should have been raised on direct appeal, see Response at 47; however, this Court disagrees. Petitioner raised the claim in his Rule 3.850 motion, and the court ruled upon the merits.

> stood up to take the witness stand and at that
> point the court told a bailiff, in the jury's
> presence to "take the cuffs off him."
> (Defendant's Notice of Ground XVI at 4.) This
> Court notes that "a defendant in a criminal
> trial has the right to appear before the jury
> free from physical restraints, such as
> shackles or leg and waist restraints." <u>Bryant
> v. State</u>, 785 So.2d 422, 428 (Fla. 2001).
> However, the Defendant's claim is without
> merit. The record specifically refutes the
> Defendant's contention that the Court ordered
> a bailiff to remove his handcuffs in front of
> the jury. (Exhibit "E," pages 379-455.)[35]
> Moreover, the record does not contain a single
> defense objection to support his allegation
> that he remained in shackles throughout his
> trial. (Exhibit "E," pages 154-469.)[36]
> Accordingly, this Court finds the instant
> claim to be without merit.

Resp. Ex. W at 186-87. Upon Petitioner's appeal, the appellate

court affirmed the denial <u>per curiam</u>.

This claim was rejected on the merits by the state trial and

appellate courts. Upon a thorough review of the record and the

applicable law, the Court, applying AEDPA's deferential standard of

review, concludes that the state courts' adjudications of this

claim were not contrary to clearly established federal law, did not

involve an unreasonable application of clearly established federal

law, and were not based on an unreasonable determination of the

facts in light of the evidence presented in the state court

---

[35] <u>See</u> Tr. at 379-455 (presentation of Petitioner's case before
the jury).

[36] <u>See</u> Tr.

proceedings. Thus, Petitioner Moore is not entitled to relief on the basis of this claim.

Moreover, even assuming that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Petitioner's claim is without merit. The record does not reflect any statement by the trial judge to the bailiff concerning the removal of Petitioner's alleged handcuffs. <u>See</u> Tr. at 405-09 (Petitioner's taking the witness stand). Additionally, there is no statement or reference, throughout the entire transcript, suggesting that Petitioner was in shackles during the trial. There are no objections by defense counsel alleging that Petitioner was in shackles, and there are no comments by defense counsel referencing any shackles. Finally, none of the filings in the trial record, appellate record or post conviction record provide support for Petitioner's bare assertion that he was in shackles during the trial. After a complete review of the record, it appears that Petitioner received a fair trial.

## O. Ground Fifteen

As ground fifteen, Petitioner claims the state court erred in sentencing Petitioner as a PRR, VCC, and HVFO because the instant offenses occurred more than five years after Petitioner's release on parole for a prior offense.[37] Since Petitioner raised this claim

---

[37] This is the same claim as ground nine. <u>See</u> Section VII. I. Ground Nine.

on direct appeal (ground one), see Resp. Ex. O at 22-25, and the appellate court affirmed Petitioner's convictions and sentences per curiam, see Moore, 729 So.2d 541; Resp. Ex. Q, this claim has been sufficiently exhausted.

On direct appeal, Petitioner claimed that the trial court erred in sentencing him as a PRR, VCC, and HVFO because the instant offenses occurred more than five years after Petitioner's release on parole for a prior offense, see Resp. Ex. O at 22, and the State filed an Answer Brief, addressing the claim on the merits, see Resp. Ex. P at 4-10. Thus, as previously noted, to the extent that Petitioner is raising, in ground fifteen, the same claim he presented of direct appeal, such a claim presents an issue of purely state law that is not cognizable on federal habeas review. See Response at 48.

Nevertheless assuming arguendo that Petitioner raised this as a federal constitutional claim on direct appeal, the State, in its appellate brief, addressed the merits of the claim. See Resp. Ex. P at 4-10. Thus, the appellate court may have affirmed Petitioner's conviction based on the State's argument on the merits. In such event the appellate court addressed the merits, Petitioner would not be entitled to relief because the state court's adjudication of this claim is entitled to deference under AEDPA.[38] Upon a thorough review of the record and the applicable

---

[38] See Wright, 278 F.3d at 1255.

law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Moreover, even assuming that the state appellate court's adjudication of this claim is not entitled to deference under AEDPA, Petitioner's claim is without merit. See Response at 49; Resp. Ex. P at 4-10; Sentencing Tr. at 187-96, 237-49. The record supports the trial court's finding that the applicable prison release date for purposes of PRR, HVFO, and VCC sentencing was November 8, 1995, see Sentencing Tr. at 249, which was within five years of the commission of the instant offenses (August 4, 1997).

## P. Ground Sixteen

As ground sixteen, Petitioner claims the state court erred in sentencing Petitioner as a PRR with respect to burglary with a dangerous weapon because Florida Statutes section 775.082(8)(1997) violates Article II, Section 3 of the Florida Constitution. Since Petitioner raised this claim on direct appeal (ground two), see Resp. Ex. O at 26-34, the claim has been sufficiently exhausted. On direct appeal, Petitioner argued that the trial court erred in sentencing him as a PRR because section 775.082(8) violates the separation of powers between the branches of state government, see

Resp. Ex. O at 26, and the State filed an Answer Brief, addressing the claim on the merits, see Resp. Ex. P at 11-37. Thus, to the extent that Petitioner is raising, in ground sixteen, the same claim he presented on direct appeal, such a claim presents an issue of purely state law that is not cognizable on federal habeas review. See Response at 50.

On direct appeal, the appellate court affirmed Petitioner's convictions and sentences per curiam and certified a question of law: Does the Prison Releasee Reoffender Punishment Act, violate the separation of powers clause of the Florida Constitution? See Moore, 729 So.2d 541; Resp. Ex. Q. In a per curiam majority opinion, The Supreme Court of Florida answered the certified question in the negative and approved the First District's decision. See Moore, 761 So.2d at 321-22; Resp. Ex. U.

Thus, if Petitioner raised this as a federal constitutional claim on direct appeal, the claim is properly before this Court. As this claim was rejected on the merits by the state appellate court and the Supreme Court of Florida, there are qualifying state court decisions, requiring the application of the deferential standard for federal court review of state court adjudications. Upon a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not

involve an unreasonable application of clearly established federal law.

## Q. Ground Seventeen

As ground seventeen, Petitioner Moore claims that the verdict rendered in state court for burglary with a dangerous weapon must be reduced to the lesser offense of burglary because in convicting him of the robbery charges the jury found Petitioner used a weapon, but not a deadly weapon.  Since Petitioner raised this claim in his motion for new trial, <u>see</u> Resp. Ex. J at 87-88, and thereafter on direct appeal (ground three), <u>see</u> Resp. Ex. O at 35-39, this claim has been sufficiently exhausted.

After lengthy arguments by the prosecutor and defense counsel, <u>see</u> Sentencing Tr. at 196-237, and the trial judge's "struggling with this issue," <u>see</u> <u>id</u>. at 236, the judge denied the motion for new trial with respect to the allegation of inconsistent verdicts, stating in pertinent part:

> Finally, Defendant contends that the jury rendered inconsistent verdicts.  Defendant's argument is premised upon the fact that the jury found that he carried a "dangerous weapon" while committing the Armed Burglary, but did not carry a "deadly weapon" when committing the Armed Robberies.  This issue was discussed at length on several occasions.
>
> Defendant, holding a BB gun, forced his way into the rear entrance of a supermarket by holding the gun to the back of a delivery person and forcing the victim to gain the attention of store employees. Once inside, he forced several additional victims to turn over their valuables to him. Defendant was

eventually overpowered by his victims when he attempted to immobilize them with adhesive tape.

The jury found that the BB gun constituted a "dangerous weapon" when Defendant employed it to gain entry to the store. The jury further found, however, that the BB gun was not a "deadly weapon" when used by Defendant to rob the occupants of the store. Instead, the jury found that Defendant simply used a "weapon" in the course of the Robberies.

Defendant contends, relying on <u>Sgroi v. State</u>, 634 So.2d 280 (Fla. 4th DCA 1994), that the verdicts are impermissibly inconsistent. However, the Supreme Court of Florida has expressly rejected the <u>Sgroi</u> analysis. <u>Fayson v. State</u>, 22 Fla. L. Weekly S516 (Fla. Aug. 28, 1997).[39] As made clear in <u>Fayson</u>, inconsistent verdicts are generally permitted, with one exception. It is only where the jury returns "true inconsistent verdicts," <u>i.e.</u>, where the verdicts on <u>legally interlocking charges</u> against one defendant are truly inconsistent, that a defendant is entitled to relief. In this case, the verdicts in dispute are Defendant's convictions for Armed Burglary and Armed Robbery. The charges are <u>not</u> "legally interlocking," since neither constitutes a necessary element for a finding of guilt of the other. See <u>Fayson</u>, <u>supra</u>; <u>State v. Powell</u>, 674 So.2d 731 (Fla. 1996); <u>McGee v. State</u>, 687 So.2d 22 (Fla. 5th DCA 1996); <u>Debiasi v. State</u>, 681 So.2d 890 (Fla. 4th DCA 1996); <u>Fernandez v. State</u>, 639 So.2d 658 (Fla. 3d DCA 1994); <u>Gonzalez v. State</u>, 440 So.2d 514 (Fla. 4th DCA 1983). At most, it could be said that the charges contain a common element, <u>i.e.</u>, that Defendant used a BB gun. A single common element, however, does not mean that the charges are interlocking.

---

[39] <u>See</u> <u>Fayson v. State</u>, 698 So.2d 825 (Fla. 1997).

Indeed, the evidence adduced at trial indicates that Defendant put the gun down during the course of the robberies; the jury was thus free to conclude that the use of the BB gun was different during the Armed Burglary than during the Armed Robberies. Nor did the jury's failure to find that the BB gun, as used in the robberies, did not constitute a deadly weapon, vitiate a necessary element of the Armed Burglary charge. <u>Cunningham v. State</u>, 647 So.2d 164 (Fla. 1st DCA 1994). The jury found that Defendant possessed a weapon, though declining to term the weapon "deadly." Such a decision is manifestly within the jury's discretion, <u>Dale v. State</u>, 22 Fla. L. Weekly S670 (Fla. Oct. 23, 1997),[40] and does not present a fundamental inconsistency simply because the same weapon, when used to commit the Armed Burglary, was deemed "dangerous" by the jury.

The Court further notes that the jury was instructed, with regard to the Armed Burglary charge, that it could find that Defendant (1) possessed a dangerous weapon or (2) did not carry any weapon. With respect to the Armed Robberies, the jury was instructed that they could find that Defendant possessed (1) a deadly weapon, (2) a weapon, or (3) no weapon at all. Thus, under Defendant's theory, the only "consistent" verdict, given the options delineated pursuant to the applicable statutes, would have been for the jury to find that Defendant did not carry a weapon, a finding clearly contradicted by the evidence. The confusion apparently stems from the fact that the definitions of "dangerous weapon" and "deadly weapon" are extremely similar, though the terms are different. See <u>Mitchell v. State</u>, 22 Fla. L. Weekly D1711 (Fla. 2d DCA July 11, 1997).[41]

---

[40] <u>See</u> <u>Dale v. State</u>, 703 So.2d 1045 (Fla. 1997).

[41] <u>See</u> <u>Mitchell v. State</u>, 698 So.2d 555 (Fla. 2nd DCA 1997).

Id. at 134-36.  On direct appeal, Petitioner argued that the trial court erred in denying his motion for new trial, see Resp. Ex. O at 35-39; the State filed an Answer Brief, see Resp. Ex. P at 38-49; and the appellate court affirmed Petitioner's convictions and sentences per curiam without a written opinion concerning this issue, see Moore, 729 So.2d 541.  To the extent that Petitioner Moore is raising, in ground seventeen, the same claim he presented on direct appeal, such a claim presents an issue of purely state law that is not cognizable on federal habeas review.  See Response at 51-52.

Even assuming Petitioner Moore raised this as a federal constitutional claim on direct appeal, the State, in its appellate brief, addressed the claim on the merits.  Thus, the appellate court may have affirmed Petitioner's conviction based on the State's argument on the merits.  If the appellate court addressed the merits, Petitioner would not be entitled to relief because the state court's adjudication of this claim is entitled to deference under AEDPA.[42]  After a thorough review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable

---

[42] See Wright, 278 F.3d at 1255.

determination of the facts in light of the evidence presented in the state court proceedings.

## VIII. Conclusion

Upon consideration of the foregoing, the undersigned finds that "[u]nder the doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard, see Yarborough v. Gentry, 540 U.S. 1, 5-6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) (per curiam), [Petitioner's] ineffective-assistance claim[s] fail[]." Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009). The remainder of Petitioner's claims are procedurally barred and/or involve issues of state law and/or are without merit. Any claims not specifically addressed by this Court are found to be without merit. Accordingly, for the above-stated reasons, the Petition will be denied, and this case will be dismissed with prejudice.

## IX. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Petitioner seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or

wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. <u>See Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id</u>. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2. The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

69

3.    If Petitioner appeals the denial of the Petition, the Court denies a certificate of appealability.  Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

4.    The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 30th day of March, 2010.


MARCIA MORALES HOWARD
United States District Judge


sc 3/29
c:
Alonzo Moore
Ass't Attorney General (Jordan)